ELDON C. JOHNSON, Plaintiff and Respondent, v. STUART WHITCOMB, et al., Defendants and Appellants.

No. 11062.
Submitted September 8, 1966. Decided January 19, 1967.
422 P.2d 642.

Smith & Emmons, Great Falls, Marvin J. Smith and Robert J. Emmons (argued), Great Falls, for appellants.

Hoyt & Bottomly, Great Falls, Richard V. Bottomly (argued), Great Falls, for respondent.

HONORABLE L. C. GULBRANDSON, District Judge, sitting in place of MR. JUSTICE DOYLE, delivered the Opinion of the Court.

This is an appeal from an order of the district court of Cascade County granting a new trial. The plaintiff's motion for a new trial came after the trial judge had entered judgment on a jury verdict for defendants.

The plaintiff-respondent is Eldon C. Johnson and will be referred to as the plaintiff. The defendants-appellants are Bernice Kingsbury, plaintiff's sister, and Stuart Whitcomb, plaintiff's nephew and Mrs. Kingsbury's son, and will be referred to as the defendants.

The issue to be decided by this appeal is whether the trial judge abused his discretion in granting the motion for a new trial.

The record before this court reveals the following facts. The defendants operated and maintained a farm and ranch in Pondera County, Montana. A large dwelling house is located on the properties owned and operated by the defendants. The plaintiff was employed by the defendants as a handyman and on July 11, 1963, while engaged in the repair of fire damage to

the attic and roof of defendants' dwelling house he was injured.

Entrance to the attic of defendants' dwelling house is gained by means of a unique stairway-ladder arrangement. Plaintiff had climbed into the attic by means of the stairway-ladder to survey and to repair the damage. Plaintiff, after making some measurements, started to back down the stairway-ladder when he fell. Just exactly how he fell was a matter that was in dispute at the trial. As result of the fall the plaintiff suffered various injuries which required medical treatment and hospitalization.

On August 7, 1963, while plaintiff was in the hospital recovering from his injuries, he was interviewed by an insurance investigator employed by the defendants' liability insurance carrier. This interview between the investigator and plaintiff was recorded on a portable dictating machine. Prior to the time of trial, a written copy of the interview was given to plaintiff's attorneys. However, after trial, the plaintiff's attorneys complained the copy they had been furnished contained twenty-seven errors in transcription.

In cross examining the plaintiff, defendants' attorneys made use of the written copy of the interview for impeachment purposes. Later, during defendants' case in chief, the defendants' attorneys sought the trial judge's permission to play the recording of the interview for the jury's consideration. The jury was excused while attorneys for plaintiff and defendant made argument to the court concerning the playing of the interview to the jury. Plaintiff's attorneys strongly urged the court to listen to the interview first, but the judge rejected this idea since he was under the impression that the interview could be played only one or two more times before the recording would deteriorate to such a condition that it would no longer be audible. Finally, over plaintiff's attorneys' objections, the trial judge decided to play the interview to the jury without first hearing it. The interview was played to the jury but the

court reporter did not take any notes on it because he was unable to understand it as played before the jury.

The trial judge also had considerable difficulty in understanding the interview, and declared that ninety per cent of the tape as played was inaudible even though he had been furnished with a copy of the transcription. During the noon recess, a sound technician was employed to amplify and clarify the recording. With the jury absent, the interview was played for the district judge. The judge found that the written copy of the interview contained many errors but that the amplified interview was quite clear. Therefore, he decided to play the interview to the jury a second time. Again plaintiff's attorney objected and added the objection that a second playing placed undue emphasis upon the testimony, but the judge overruled these objections and allowed the interview to be played to the jury a second time.

During the second playing of the interview to the jury the court reporter again did not make a record of the interview.

On September 25, 1965, some seven months after trial, the court reporter transcribed the interview at the request of the defendants' attorneys without notice to plaintiff's counsel. Thus, it now appears as part of the record before this court.

The interview, as it was reproduced by the court reporter on September 25, 1965, contains statements by the plaintiff on fact issues that were in dispute in this lawsuit, for instance, the plaintiff's familiarity with the stairway-ladder construction features; the safeness of the stairway-ladder; the number of times plaintiff had used the stairway-ladder; and the plaintiff's opinion as to the cause of the accident.

The majority of the argument surrounding the motion for a new trial dealt with the manner in which the interview was presented to the jury and the fact that it had been played twice. The district court's order granting the new trial gave several reasons, among which was the reason "that there was

an irregularity in the proceedings that prevented the plaintiff from having a fair trial."

In State Highway Commission v. Greenfield, 145 Mont. 164, 399 P.2d 989, this court reviewed previous decisions dealing with appeals from orders granting new trials. This review of the cases clearly established that granting a new trial is within the sound discretion of the district judge and that generally it will not be reversed if there is no showing that discretion has been abused.

The record before this court supports the idea that the manner in which the recorded interview was presented to the jury was at least unusual.

In State v. Driver, 38 N.J. 255, 183 A.2d 655, 672, the court stated: "In all situations, however, the trial judge should listen to the recording out of the presence of the jury before allowing it to be used. In this way he can decide whether it is sufficiently audible, intelligible, not obviously fragmented and, also of considerable importance, whether it contains any improper and prejudicial matter which ought to be deleted."

Here the recorded interview was first played to the jury with the trial judge later declaring that about ninety per cent of the interview was unintelligible while defendants' counsel contended that only ten per cent was unintelligible. Then, after electronic equipment was available, the interview was again played in its entirety to the jury over objections of plaintiff's counsel. It was well within the discretion of the trial judge to rule that the use of the recorded interview in that manner created an irregularity in the proceedings which prevented the plaintiff from having a fair trial. This is true even more so when we consider that use of the interview for impeachment purposes appeared to be a major portion of the defense case.

Our holding that the trial judge did not abuse his discretion in ordering a new trial renders a consideration of the other specifications of error moot.

The order appealed from is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUS-
TICES ADAIR, JOHN CONWAY HARRISON and CASTLES,
concur.