THOMAS TIGH, Plaintiff and Respondent, v. COLLEGE PARK REALTY CO., Defendant and Appellant.

No. 11191.
Submitted January 11, 1967.   Decided April 26, 1967.
427 P.2d 57.

Alexander, Kuenning & Hall, John H. Kuenning (argued), Great Falls, for appellant.

John C. Hoyt and Richard V. Bottomly (argued), Great Falls, for respondent.

MR. JUSTICE DOYLE delivered the Opinion of the Court.

This is an appeal from an order granting a new trial.

The action was brought in the district court of Cascade County to recover damages for personal injuries alleged to have resulted when the plaintiff slipped and fell on the defendant's

parking lot. There was a unanimous verdict for the defendant and from an order granting a new trial the defendant appeals.

During 1957 the respondent, Thomas Tigh (hereinafter called the plaintiff) was involved in a collision between the motorcycle he was driving and an automobile. As a result of this collision the plaintiff suffered severe injuries to the left side of his body including a fractured left leg. About nine and one-half months later the same leg was again fractured while the plaintiff was sitting on the edge of a bed. Recovery was further complicated by an infection in the fractured leg. Part of plaintiff's treatment was under the supervision of Doctor Power who has his office in the College Park Medical Center which is owned and maintained by the appellant, College Park Realty Company (hereinafter called defendant). On one of his visits to Dr. Power's office during 1965, plaintiff slipped and fell on the College Park Medical Center's parking lot and refractured his leg. This action was brought to recover for injuries sustained from the fall on defendant's parking lot.

During the two days previous to plaintiff's fall, the City of Great Falls, Montana, experienced unseasonably high temperatures which melted much of the existing snow cover. This thaw was followed by a freeze with the result that the city, including the defendant's parking lot, was coated with a sheet of ice covered by a skiff of new snow. The plaintiff denied knowing of the ice, but observed the snow.

Plaintiff, who no longer used crutches and braces, drove his car to the defendant's parking lot by himself. Although his left arm was paralyzed and the motion of his left knee was limited, plaintiff walked unassisted from the place where he parked his car to Dr. Power's office. Plaintiff fell and was injured as he was returning to his car about thirty minutes later.

Plaintiff alleged that the defendant was negligent in not warning him of the dangerous condition of the premises and that the defendant was further negligent in not making the premises safe. Defendant denied negligence on the ground that

removing the snow and not the ice was the accepted custom and usage of similar parking lots in the community and that he had no duty to warn the plaintiff because the hazard was obvious.

The grounds specified for granting a new trial appeared as follows: "It is hereby ordered that plaintiff, Thomas Tigh, be and he is hereby granted a new trial on the grounds and for the reason that there was an insufficiency of evidence to justify the verdict and the jury's decision was against the law; that there was error in the law occurring at the trial and excepted to by the party making application for a new trial; that there was irregularity in the proceedings which prevented the plaintiff from having a fair trial." These are three of the eight general statutory grounds provided in section 93-5603, R.C.M.1947. The district court did not elaborate on the statutory language.

There are several well-established rules governing new trials. The trial court has broad discretion to grant or to refuse to grant new trials and will not be reversed upon appeal except for a manifest abuse of discretion. An order granting a new trial will be upheld if it can be sustained on any ground named therefor. Orders granting new trials will not be set aside as readily as orders denying new trials since the latter ends the litigation while the former restores the parties to their respective positions before the trial. State Highway Commission v. Greenfield, 145 Mont. 164, 399 P.2d 989, and cases cited. See also Johnson v. Whitcomb, 149 Mont. 23, 422 P.2d 642, where the rules summarized in the Greenfield case were recently approved.

Under the rules just stated the appellant has the burden of proving that the district court manifestly abused its discretion by granting the new trial. This is a difficult burden because it requires proof of the negative fact that no error was committed which would justify a new trial. However, a prima facie case of manifest abuse of discretion may be made by discrediting the grounds specified for granting the new trial or

showing that existing error did not materially affect the substantial rights of the moving party as required by section 93-5603.

The arguments advanced for this appeal placed great emphasis on the propriety of admitting portions of a complaint filed by the plaintiff in a prior action. Some additional background is necessary to understand the issues involved. From the beginning of the trial it became apparent that the issue of damages would be drawn into sharp dispute because of the former injuries. The evidence adduced on behalf of the plaintiff was intended to prove that the plaintiff had enjoyed a near total recovery and that therefore most of the existing disability can be attributed to injuries sustained on the defendant's parking lot. In this connection, Mr. Howard Tigh, father of the plaintiff, testified that his son had been leading an active life after the 1957 injury and before the 1965 injury including hunting, fishing and hiking. On cross-examination additional details of the plaintiff's hunting, fishing and hiking activities were supplied. Then, without objection, these questions were asked and these answers were given:

"Q. Prior to this time and after the accident of 1957, did anybody tell you that Tom's leg was 75 percent permanently disabled? A. I never knew that to be true. I never even knew that he had that much disability in the leg. In fact, I never knew exactly what his disability was in that leg. He seemed to get around awfully good. And he wanted to go on outings and exercise.

"Q . I take it then, Mr. Tigh, that you never represented to anybody that it was 75 percent permanently disabled, if you never knew it? A. I never knew it was 75 percent. I don't know it yet."

Then, over objection that the cross-examination exceeded the scope of the direct examination, the court allowed a portion of a complaint filed in connection with the 1957 injury to be entered into evidence. Only that portion of the complaint which

recited Thomas Tigh's leg was 75 percent permanently disabled was allowed . This complaint was signed, under oath, by the witness as guardian ad litem for Thomas Tigh who was then a minor under our former rules which required a verification.

Plaintiff contends that the admission of the statement contained in the complaint was improper impeachment and one ground for sustaining the order granting a new trial. We think this contention fails when tested against the applicable rules of evidence.

Section 93-1901-7, R.C.M.1947, provides that a witness may be cross-examined as to any facts stated in his direct examination or connected therewith. The direct examination of Howard Tigh raised the question of plaintiff's physical condition by describing him as being active. Cross-examination with respect to the witness's prior statement of the plaintiff's physical condition during the same period of time can hardly be outside the facts testified in such direct examination.

Section 93-1901-12, R.C.M.1947, provides that a witness can be impeached by use of a prior inconsistent statement so long as a proper foundation is laid. The witness's statement that his son's leg was 75 percent permanently disabled is clearly inconsistent with his direct testimony that his son was able to lead an active life prior to the 1965 injury. The witness recognized the source and nature of the complaint and admitted having signed such a sworn document.

Impeachment is limited by the rule that it will not be allowed with respect to collateral matter. Bullard v. Smith, 28 Mont. 387, 401, 72 P. 761, 764. This limitation is not invoked here because the extent of plaintiff's physical disability prior to the injury sustained on defendant's parking lot is both relevant and material to the issue of damages.

No question of opinion evidence is raised by the admission of the prior inconsistent statement because it was admitted for the purpose of impeachment and not for the purpose of proving the truth of the statement.

Even if the portions of the complaint read to the jury were held to be inadmissible no prejudice could have resulted. The evidence objected to is relevant to damages only. Since the jury found no liability on the part of the defendant the question of damages was not reached.

Another source of error argued in this appeal was the instruction given on the duty owed by owners or occupiers of land to their invitees. In particular the plaintiff objected to the jury being instructed that there is no duty to warn invitees of obvious dangers. The instruction given is very similar to instruction 120.4 of the Montana Jury Instruction Guide (MJIG) recently approved in Regedahl v. Safeway Stores, Inc., 149 Mont. 229, 425 P.2d 335, and correctly stated the duty owed to the plaintiff.

Other instructions refused by the court attempted to establish that the dangerous condition of the parking lot was not obvious as a matter of law and that the defendant had a duty to make the premises safe for the plaintiff. The duty to warn invitees depends upon whether it would be reasonable to expect an ordinary person to observe the danger under the circumstances of the individual case. Regedahl v. Safeway Stores, Inc., supra, Clark v. Worrall, 146 Mont. 374, 406 P.2d 822. Normally the question of the existence of a duty to warn an invitee will be a question for the jury as we think it is in this case. Owners or occupiers of land do not have an absolute duty to make their premises safe for their invitees but need only use ordinary care to keep their premises reasonably safe. Regedahl v. Safeway Stores, Inc., supra, and cases cited.

We are also of the opinion that the record submitted in this case does not permit a finding that the defendant was negligent as a matter of law. This issue was properly submitted to the jury.

All of the potential errors argued before this court as grounds for a new trial have been considered and are found to be without merit. Only those issues which raised a substan-

tial legal question have been discussed . We are of the opinion that the record actually discloses a trial favorable to the plaintiff and therefore conclude that the district court did abuse its discretion by granting a new trial.

The order granting a new trial is reversed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES ADAIR, CASTLES and JOHN C. HARRISON concur.