BESSIE P. BLEVINS, Plaintiff and Appellant, v. WEAV-
ER CONSTRUCTION COMPANY, Defendant and Re-
spondent.

No. 11144.
Submitted September 12, 1967. Decided October 13, 1967.
Rehearing denied November 1, 1967.
432 P.2d 378.

Murphy, Robinson & Heckathorn, James I. Heckathorn, Kalispell, (argued), for appellant.

Korn, Warden & Walterskirchen, Merritt N. Warden, Kalispell, for respondent.

MR. JUSTICE JOHN C. HARRISON, delivered the Opinion of the Court.

This is an appeal from a jury verdict in favor of the defendant construction company, hereafter referred to as the respondent.

On August 30, 1963, appellant was riding in the family pickup truck, driven by her husband, when the pickup became involved in a minor accident with a road grader being used by an employee of the respondent. The accident occurred about half-way through a 32 mile rebuilding and reconstruction job on what is known as the Lolo Pass road which leads into Idaho. The condition of the road was described by various contruction people as one of the roughest road jobs they had ever worked on.

The respondent construction company was the general contractor for the Lolo Pass road and at the time of the accident was more than half way through their job. On the particular area where the accident occurred the respondent was graveling, watering and rolling the road preparatory to putting on an asphalt surface. The testimony showed that throughout the contruction work some 200 safety signs were in evidence. Some of these signs read "Road under contruction"; "35 miles per hour"; "slow"; "men at work"; "machines at work"; "surveyors at work", etc. In fact, the testimony revealed that

over $8,000 was spent on signs for this project to warn motorists and protect the workers. On the morning of the accident Frank McCloncy was operating a road grader spreading gravel from windrows previously placed on the project. He was driving west and behind him going east was a water truck driven by one of respondent's employees. The windrows of gravel were so arranged that about every 2,000 feet there would be a break in the windrow. At the time of the accident the respondent's patrol had reached such a break and was in the process of turning around when the driver of the appellant's car attemped to pass the grader and the collision occurred. McCloney testified that just before reaching the break in the windrow he lifted the blade of the grader, pulled off to the right in order to have space to make the turn and then set the patrol in motion to the left, at which time he heard the pickup slide gravel, then the pickup hit the front tire of the patrol. He further testified that he was traveling about two miles per hour at the time of the accident and that he stopped the patrol not over a foot after impact. He testified that he had looked back about some 400 feet before beginning the turn and that he saw only the water truck to the rear of him. As a result of the collision the pickup went some ten feet and stopped against a gravel pile. The pickup truck had damage on the right-hand door and the rear fender was pushed into the rear wheel. It was possible at the scene of the accident to make temporary repairs so that the appellant and her husband were able to continue their trip into Idaho and a few days later return to Kalispell, Montana, carrying a horse in the rear of the truck.

Immediately after the vehicles came to a halt McCloney got out and went up to the Blevin's pickup. He asked appellant if she were injured and if she needed a doctor, and he was told by appellant that she had bumped her ankle on the heater, and she did not need a doctor. He observed that her ankle was bruised. He testified that several days later he saw appellant and her husband returning to Montana over the same road,

that there was a horse in the pickup, but that the Blevins had not stopped to talk with him on that occasion.

The appellant testified that at the time of the accident they were traveling slowly behind the patrol to the far right of the road and that the patrol went to the right as though to give them room to pass and that they started to pass when the patrol turned left into them hitting the side of the car and jarring her up considerably. Appellant testified she hit her shin and that it swelled up. She was able a short time after the collision to get out and walk around and determine that no bones were broken, but that the next morning she not only had an injured leg but that her back began to bother her. While not in issue in this appeal appellant upon returning to Kalispell received medical attention for her leg and later had back surgery.

Within ten minutes after the collision the driver of the respondent's water truck having reversed his directions came up to the point of the collision, got out and talked to appellant's husband. The driver of the water truck, Huson, testified that he saw the Blevins' car pass him and that in his opinion the pickup was traveling 40, 45 or 50 miles per hour, then over the appellant's objection, Huson testified that he talked to Mr. Blevins and that he asked him how fast he was traveling and he said from 45 to 50 miles per hour. On cross-examination of Huson, appellant showed that Huson, in a statement given an insurance adjuster some six months after the accident, stated he had not talked to Mr. Blevins.

For the purpose of understanding the issues raised on appellant's appeal, it is important to note that appellant's husband did not testify at the trial.

The appellant sets forth several issues for our consideration. For the purpose of discussion on appeal they will be combined and discussed as follows:

(1) That the court erred in giving of Instructions 15 and

18 in that when considered together they remove from the defendant any duty to exercise care in driving the grader.

(2) That error was committed in admitting the statement of the husband relative to the speed he was traveling at the time or just prior to the collision.

The two Instructions objected to by the appellant read as follows:

"INSTRUCTION NO. 15: You are instructed that it is the duty of an ordinary traveller on a highway to keep a lookout for approaching vehicles, but where a person is lawfully performing work upon a highway, the relationship is different, and such workman is not required to keep the same lookout as the traveller. All that is required of such workman is that he keep such lookout for vehicles as an ordinarily careful man similarly situated would keep.

"INSTRUCTION NO. 18: You are instructed that if you find from the evidence that at the time and place of the occurrences in question the Defendant's employee, Frank McCloney, was a workman engaged in working upon the highway involved in this action, then I instruct you no duty was imposed upon him to be constantly on the lookout for motor vehicles; on the contrary, it is the duty of drivers of motor vehicles to observe workmen upon the highways, and to avoid contact with them."

The appellant admits that Instruction 15, standing alone, is not fatal, but when read with Instruction 18 it becomes fatal for he states considering the two the effect of 18 is to say that an equipment operator in a road construction area has NO duty to maintain a lookout.

We cannot agree with such a contention. Instruction 15 instructed the jury that a person lawfully working on a highway is not required to keep the same lookout as a traveler, but is required to "keep such lookout for vehicles as an ordinarily careful man similarly situated would keep." To hold otherwise would require the driver of the machine to be on

constant lookout to the rear while moving his vehicle forward and performing the numerous mechanical functions necessary to operate the rather complicated machine. Too, it must be remembered he testified he looked back occasionally. Instruction 18 instructs as to the standard of care to be exercised by equipment operators and says they do not have to be "constantly" on the lookout and points out that motor vehicles must observe and avoid contact with them.

Considering the facts here that the collision involved resulted from the actions of both the driver of the road grader and the pickup it became necessary that the jury know the degree of care to be exercised by each driver under the circumstances. The effect of these two instructions, when read in context with the other instructions advises the jury in plain and simple language the nature of the duty of care to be exercised by the two drivers involved, and left it up to the jury to apply such definitions to the facts presented.

To the second issue for consideration, the admission of appellant's husband, made some ten minutes after the collision, as to the speed he had been traveling just prior to the accident we find no error as to its admission for the jury's consideration.

Appellant alleges the statement was not a part of the *res gestae* and therefore inadmissible. However, no such objection was made to the statement when given at the trial. The only objection being that the statement was hearsay. The court over-ruled the objection when the witness testified that the plaintiff was present when the statement was made.

Due to the peculiar facts of this accident, in that appellant said they had followed the patrol for several minutes at a slow speed, and the conflicting testimony of Huson concerning the speed of the pickup prior to the accident, just how long the pickup followed the patrol before attempting to pass, the question of the pickup's speed became important as a physical fact in what was the proximate cause of the accident.

■ The declaration was admissible either as a declaration which was a part of a transaction as provided for in section 93-401-7, R.C.M.1947, or as *res gestae,* which section provides:

"*Declarations which are a part of the transaction.* Where, also, the declaration, act, or omission forms part of a transaction, which is itself the fact in dispute, or evidence of that fact, such declaration, act, or omission is evidence, as part of the transaction."

■ This court in considering the application of this statute held that this provision was not intended to embody the statement of a rule by which to determine the competency of declarations relative to a transaction, but to be a mere direction that they must be deemed competent when they are so connected with the main transaction as to form a part of it. Callahan v. Chicago, etc., R. Co., 47 Mont. 401, 133 P. 687, 47 L.R.A., N.S., 587; Tanner v. Smith, 97 Mont. 229, 33 P.2d 547. It would also seem that the statement was admissible as part of the *res gestae* for this court in a like situation stated they reiterate the well-recognized rule that the solution of the question of admissibility of evidence must in every case be left largely to the sound discretion of the trial court, subject to review only in case of manifest abuse. Sullivan v. Metropolitan Life Ins. Co., 96 Mont. 254, 267, 29 P.2d 1046.

Here, as in the Sullivan case, supra, the effect of the admission of the statement was minimized by the admission of evidence of other witnesses for both sides as to whether such a statement had been made. We find that the court did not abuse its discretion in admitting the statement.

We have carefully considered the other specifications set forth in appellant's case and find them without merit.

The judgment of the district court is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES CASTLES and ADAIR concur.

MR. JUSTICE FRANK I. HASWELL, deeming himself disqualified, did not sit in this case and did not participate in this opinion.