KENNETH L. GUNDERSON, Plaintiff and Appellant, *v.*
IKE BREWSTER, Defendant and Respondent.

No. 11718.
Decided January 21, 1970.
Rehearing Denied February 17, 1970.
466 P.2d 589.

Morrow, Nash & Sedivy, Bozeman, James H. Morrow, Jr., appeared and Edmund P. Sedivy argued, Bozeman, Warner, Pierce, Peden, Seattle, Wash., for appellant.

Landoe, Gary & Olson, Bozeman, Joseph B. Gary argued, Bozeman, for respondent.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

This action arose in Gallatin County on a complaint filed by plaintiff on March 11, 1968. The original complaint was thereafter amended seeking punitive as well as compensatory damages. A pre-trial conference was held on March 20, 1969

and trial was subsequently held on April 2, 3, and 4, 1969. The jury returned a verdict in defendant's favor, and judgment was entered by the court pursuant to such verdict. Plaintiff moved for a new trial, and the motion was denied. From the judgment and from the denial of the motion for new trial plaintiff appeals.

The facts, although in dispute, are in general that plaintiff, then 18 years of age, his two uncles, Noel Gunderson and Gary Gunderson, and a friend, Gerald Swanson, all being six to seven years older than plaintiff, arrived in West Yellowstone, Montana on July 1, 1967 from the State of Washington. Their avowed purpose for being in Montana was to visit relatives of the Gundersons over the Fourth of July weekend.

They arrived about noon and checked into a motel. They then went directly to an aunt and uncle's home to visit. Plaintiff stayed there for an hour or so and drank one beer. He then went downtown to eat a hamburger at a cafe. Returning to his aunt's home he remained there until about 4:30 p.m. when he and Gerald Swanson went downtown and stopped for a beer at the cafe where plaintiff had eaten the hamburger earlier. After leaving the barcafe they looked in windows of a curio shop for a while. Plaintiff then left his friend Swanson and continued up the street to the Lariat Bar. From this point of time the plaintiff cannot remember anything until waking up in a Missoula hospital the next day.

Testimony of others indicates that plaintiff entered the Lariat Bar and ordered a beer. After being shown I.D. cards the bartender served plaintiff. The defendant, owner of the Lariat Bar, had just finished a shift behind the bar and was preparing to leave. Defendant is a rather large man at 5 feet 11 inches tall, weighing 230 pounds. Plaintiff is only 5 feet 9 inches tall, weighing 145 pounds. Defendant testified that plaintiff went to the juke box, inserted a coin and after nothing happened began kicking the machine and swearing profusely. Defendant then went to plaintiff and asked what

408

was wrong, whereupon plaintiff informed defendant that the machine had failed to play. Defendant retrieved the coin plaintiff had inserted and told plaintiff that the machine took a dime or a quarter and not just a nickel. Plaintiff then inserted a quarter and asked his uncle Noel, who happened to be in the bar, to play a selection. Plaintiff returned to the bar and placed his arms around the wife of the bartender. She immediately pushed him away and defendant came over to plaintiff, grabbed him by the seat of the pants and nape of the neck and ushered him out of the bar. Defendant turned around and moved back into the bar, whereupon the bartender informed him that plaintiff was coming back in. Defendant asked the bartender to hand him the "stick". The "stick" is a three foot long pick-axe handle which was kept behind the bar. About the time defendant received the stick from the bartender he testified plaintiff had his hands on defendant's shoulders and as he swung around he hit plaintiff on the side of the head. Defendant further testified that plaintiff staggered back from the blow, then came at him again. The defendant then struck plaintiff again, this time on the shoulder. The second blow apparently rendered plaintiff unconscious and he fell to the floor where he remained for one to two minutes. He was helped from the bar by his uncles and Gary Swanson who had appeared after the fracas.

Plaintiff's uncle Noel disputed defendant's testimony concerning the fracas. He stated he did not see defendant eject plaintiff from the bar, nor did he see plaintiff place his arms around the bartender's wife. He said he was standing at the juke box at the time with his back to the bar and that he did not hear any scuffle. He further testified that he turned around in time to see the defendant take a baseball type swing and hit plaintiff with the club. He also stated that after plaintiff had been hit he did not attack defendant but insisted that defendant stepped forward and again hit plaintiff on the head without any further provocation. We observe

parenthetically that in view of other testimony by disinterested witnesses, the total lack of observation of events by the uncle, except those favorable to the nephew, is highly unusual.

Early the next morning, after plaintiff had slept for some time, his uncles and Swanson decided that his condition was becoming worse and they drove him to Bozeman. After an examination by a doctor in Bozeman, he was transferred to a Missoula hospital by air ambulance. The Missoula doctor who treated plaintiff had to perform a brain operation to relieve the pressure on plaintiff's brain caused by bone fragments and by an epidural hematoma (better known as a blood clot). Plaintiff testified he subsequently lost a considerable amount of money due to loss of work and loss of jobs which he could not hold because of the injury. He also testified that he may have to have a steel plate placed in his head where the operation took place to protect the brain.

Plaintiff sets forth six separate issues for this Court's determination.

(1) Whether the court erred in failing to properly instruct the jury on plaintiff's theory of wanton negligence.

(2) Whether, under the plaintiff's theory of wanton negligence, the court erred in giving the defendant's proposed instructions on the defense of "self-defense."

(3) Whether it was error for the court to instruct the jury on what constitutes a trespasser, without also instructing the jury as to what duties the defendant owes to a trespasser.

(4) Whether the court erred in failing to admit evidence of a statement made by defendant immediately after striking plaintiff concerning his purpose for striking the plaintiff.

(5) Whether the court erred in granting defendant's motion in limine concerning prior acts of plaintiff and defendant.

(6) Whether the court erred in failing to grant plaintiff's motion for a new trial.

The issues will be discussed in the order they are presented.

The first issue raises a question concerning instructing

the jury on wanton negligence. In examining the record, the only time the word "wanton" appears is in the pretrial order and there the word is penciled in, apparently as an afterthought. The plaintiff's complaint alleged that defendant had negligently, wilfully, intentionally and wrongfully hit plaintiff in the head. The district court with regard to wanton negligence gave as instruction 5 the following:

"You are instructed that wanton negligence essentially involves creation of an unreasonable risk of bodily harm to another together with high degree of probability that substantial harm will result."

Plaintiff complains that the court should have given his proposed instructions 7, 8 and 9 concerning the theory of wanton negligence. We are well aware of our holding in Meinecke v. Skaggs, 123 Mont. 308, 313, 213 P.2d 237, that "Ordinarily a party has the right to instructions adaptable to his theory of the case." We are also aware of our holding in Wollan v. Lord, 142 Mont. 498, 504, 385 P.2d 102, that "A trial judge will not be held in error for refusing to give instructions where the subject has been adequately covered by other instructions * * *." Plaintiff's proposed instructions 8 and 9 are merely expanded definitions of wanton negligence and are totally repetitious. Plaintiff's proposed instruction 7 is an explanation of the right to recover damages if the jury finds for the plaintiff and this was covered under court's instruction 13 which reads:

"Every person who suffers detriment from the unlawful act or omission of another person may recover from him a compensation therefor in money which is called damages. In this case detriment is the loss or harm suffered. The measure of damages is the amount which will compensate for all the detriment proximately caused thereby hereinbefore defined, whether it could have been anticipated or not."

Thus there was no error in refusing to give plaintiff's proposed instructions 7, 8 and 9.

Plaintiff's second issue is rather unusual. Under the first issue he argues that he has a right to instructions on his theory of the case but in the second he argues that defendant does not have a right to instructions on defendant's theory of the case. With this we cannot agree. The Meinecke case, supra, did not distinguish between one party and the other. We fail to see any reason to so distinguish now. The right to instructions adaptable to a party's theory of the case if there be credible evidence thereon, belongs to both parties, not just to one.

The third issue presented appears to be a combination of the first two. Plaintiff argues the instruction concerning business invitees becoming trespassers should have been accompanied with instructions on defendant's duties toward such trespassers. As we have already indicated, the theory of wanton negligence was adequately covered by court's instruction 5, supra. As to any other instructions which should have been given we refer plaintiff to Rule 51 of the Montana Rules of Civil Procedure, which states in part, "No party may assign as error the failure to instruct on any point of law unless he offers an instruction thereon." Here plaintiff did not offer any instructions concerning defendant's duties toward a trespasser other than wanton negligence.

The fourth issue presents a question concerning the res gestae rule. Plaintiff argues that the district court erred in refusing to allow a witness to testify concerning an alleged statement made by defendant that he hit plaintiff because plaintiff was "bothering the lady." The statement was allegedly made directly after defendant hit plaintiff and while plaintiff was still unconscious. This, plaintiff contends, was directly within the rule of res gestae and therefore should have been admitted. Plaintiff cites section 93-401-7, R.C.M. 1947, as authority for this proposition. That section reads as follows:

"Declarations which are a part of the transaction. Where,

also, the declaration, act, or omission forms part of a transaction, which is itself the fact in dispute, or evidence of that fact, such declaration, act, or omission is evidence, as part of the transaction."

As we have stated on numerous occasions, this statute is not a rule by which to determine the competency of declarations relative to a transaction, but is merely a direction that they must be deemed competent when they are so connected with the main transaction as to form a part of it. We have also stated that the admissibility of evidence must in every case be left largely to the sound discretion of the trial court, subject to review only in case of manifest abuse. See Blevins v. Weaver Const. Co., 150 Mont. 158, 432 P.2d 378; Sullivan v. Metropolitan Life Ins. Co., 96 Mont. 254, 29 P.2d 1046; Tanner v. Smith, 97 Mont. 229, 33 P.2d 547; Callahan v. Chicago, etc., R. Co., 47 Mont. 401, 133 P. 687, 47 L.R.A., N.S., 587. We find no abuse of discretion on the part of the trial court in refusing to allow testimony of statements allegedly made by defendant. The jury was well aware of the fact that plaintiff had "bothered the lady", and they were also aware that defendant had escorted plaintiff out of the bar because he was "bothering the lady".

■■ The defendant moved in limine to limit plaintiff's offered testimony as to prior acts of defendant in striking other persons at other times with the pick-axe handle. The district judge granted the motion and plaintiff excepted. Plaintiff claims in his brief that it was error to allow the motion because,

"* * * under the Plaintiff's theory of wanton negligence, or reckless disregard of safety, the Defendant will be liable for his actions if he knows or has reason to know the facts which would lead a reasonable man to realize that his conduct creates an unreasonable risk of physical harm to another. * * *

"Therefore, evidence of prior use of this pick-axe handle and

the result therefrom, as known by the Defendant is relevant as to whether or not his conduct was wanton."

We do not agree with this argument. This Court has long recognized the rule that evidence of the defendant's character or reputation for peace and quietude or turbulence and quarrelsomeness is inadmissible in an action for assault. Kornec v. Mike Horse Mining & Milling Co., 120 Mont. 1, 180 P.2d 252. The rule is equally applicable to an action in wanton negligence and therefore the trial court committed no error in granting the motion.

The final issue presented by plaintiff is whether the court erred in failing to grant plaintiff's motion for a new trial. Plaintiff complains that the verdict was contrary to the evidence and against the law. As we have stated in other decisions, the granting of a new trial is completely within the sound discretion of the trial court. If the new trial is denied, the order will be reversed only for manifest abuse of that discretion. Here the jury returned a verdict in favor of defendant. They could see the witnesses, were in the best position to tell whether one or another was telling the truth, and were adequately instructed on the law of the case. Therefore we fail to see where the trial court has abused its discretion in refusing to grant the motion for a new trial.

Finding no error, the judgment is affirmed.

MR. JUSTICES CASTLES, JOHN C. HARRISON, and HASWELL and the HONORABLE LeROY L. McKINNON, District Judge, sitting in place of MR. JUSTICE BONNER, concur.