JULIANNE SEDER, Administratrix of the Estate of Edward Seder, Deceased, Plaintiff and Appellant, v. PETER KIEWIT SONS' COMPANY, a Corporation, and Harold W. Frazier, Defendants and Respondents.

No. 11760.
Submitted Nov. 13, 1970.
Decided Jan. 7, 1971.
Rehearing Denied Jan. 27, 1971.
479 P.2d 448.

Hughes & Bennett, Michael J. Hughes argued, Helena, J. Brian Tierney, Butte, Arthur Ayers, Red Lodge, for plaintiff-appellant.

Anderson, Symmes, Forbes, Peete & Brown, Weymouth Symmes and John L. Hilts argued, Billings, for defendants-respondents.

MR. JUSTICE HASWELL delivered the Opinion of the Court.

Wrongful death action by administratrix of the estate of a truck driver killed in a collision with a truck leased by one defendant and driven by the other defendant. The jury entered its verdict in favor of defendants and the district court of Yellowstone County entered judgment thereon, subsequently denying plaintiff a new trial. Plaintiff appeals from the final judgment and order denying her a new trial.

The accident in question occurred on the afternoon of May 16, 1967 and involved a collision between a 1955 Dodge two-ton farm truck loaded with 5 to 6 yards of gravel being driven by decedent, and a 10 wheel Ford dump truck loaded with asphalt weighing about 25 tons leased by Peter Kiewit Sons' Company and driven by one of its employees, Harold Frazier, the other defendant. The accident occurred on a road con-

struction project involving a 7 mile segment of Interstate highway generally between Laurel and Park City, Montana. Defendant Peter Kiewit Sons' Company was the general contractor on the project and at the time of the accident, was involved in paving operations on the two south or westbound lanes of the divided highway. Decedent was a farm laborer employed by Roger Hart, a farmer living some distance to the north of the project; decedent was engaged in hauling reject gravel purchased from Peter Kiewit Sons' Company to the farm of his employer. None of the Interstate highway involved in the project was yet open to travel by the general public.

Roger Hart, decedent's employer, agreed to purchase reject gravel from the contractor at 40 cents per yard and to haul it himself pursuant to a conversation between Hart and Richard Bodine, the contractor's superintendent, in a machine shop in Laurel a week or so before the accident. Nothing was said as to the location of the gravel nor when it was to be hauled.

On the day of the accident, Hart and decedent drove a truck and loader onto the project and proceeded to a gravel pit located near the middle of the project and a short distance north of the Interstate highway where an asphalt hot mix plant was being operated. They did not notify the contractor they were coming to haul the gravel nor did the contractor know they were coming at that time. A conversation ensued between Hart and Floyd Waslaski, the contractor's foreman in charge of the hot mix plant. Waslaski told Hart that the gravel was located at another gravel pit to the west about ¾ mile east of the Park City interchange which would involve using the Interstate to reach it. Waslaski also told Hart "to be aware, that there was trucks hauling on both lanes." At this point there is a conflict in the testimony. Hart testified that he asked Waslaski if it would be all right to use the Interstate on the way back to a point about a mile east of the hot mix plant where there was an exit off the Interstate to a

gravel road leading north to Hart's farm and that Waslaski said, "Yes." Waslaski denies this further conversation.

With Hart driving the truck and decedent the loader, they proceeded from the hot mix plant onto the Interstate, west on the Interstate to the gravel pit where their gravel was located, off the Interstate, and into the gravel pit. There they met David Martin, a contractor's employee on duty there, who was there to load farmers' trucks with gravel. Martin told them to park the loader and he would load the gravel himself. At this point there is another conflict in the testimony. Hart testified that he asked Martin if he could go west from the gravel pit and connect with U.S. Highway #10 which would take him to his farm, but Martin told him no, that he had better go back the way he came. Martin denies this further conversation.

After the gravel was loaded in Hart's truck, Hart and decedent left the gravel pit, travelled east on the north lane of the two lane westbound portion of the Interstate, past the access road to the hot mix plant, turned north off the Interstate onto a gravel road, and proceeded to Hart's farm where they unloaded the gravel. Decedent, driving Hart's truck, returned to the gravel pit alone for a second and third load of gravel by retracing the same route as before. The accident occurred on the third trip from the gravel pit back to Hart's farm. The loaded truck that decedent was driving east on the north lane of the two westbound lanes of the Interstate struck a loaded Kiewit truck driven by Frazier which was proceeding south at a right angle across the westbound lanes of the Interstate to the eastbound lanes for travel westbound to the lay-down area where the paving machine was operating. It was a broadside collision between the front end of the truck decedent was driving and the right side of the contractor's truck on a level and visually unobstructed area. The investigating highway patrolman placed the point of impact at the center of the southernmost of the two westbound lanes comprising

the north lanes of the Interstate. There were no ascertainable skid marks. The impact from the collision moved the gravel in the farm truck forward, crushing decedent and causing his death.

None of the Interstate construction was yet open for public travel although the two northernmost lanes comprising the two westbound lanes had been completely paved. There were "zebra board" barricades at each end of the construction project. General traffic was using the old U.S. Highway #10 located some distance north of the Interstate project. The contractor's truck driven by Frazier was in the established hauling pattern for trucks hauling hot mix from the hot mix plant to the laydown area where the paving machine was being operated. There were no warning signs or flagmen. Testimony was introduced of an unwritten custom in the construction business that a loaded vehicle has the right-of-way over an unloaded vehicle. The farm truck decedent was driving had a red cab and green box similar in coloring to the contractor's trucks.

Frazier was driving the contractor's truck with a load of about 25 tons of hot mix. After leaving the asphalt plant he proceeded generally south along a connecting road between the asphalt plant and the Interstate in the haul pattern. Before crossing the two northernmost or westbound lanes of the Interstate, Frazier testified he looked both ways on the Interstate two different times and saw a red and green truck approaching. He believed it to be one of the contractor's trucks and proceeded across the two northernmost or westbound lanes of the Interstate at a speed of about 10 miles an hour. Some time after the accident the farm truck was observed to be in third gear. Hart testified the truck would go about 35-38 miles an hour in third gear. Impeachment testimony was admitted, over plaintiff's objection, by Schultz, a contractor's

employee, that he had seen the farm truck being driven at an estimated speed of 65-70 miles an hour earlier that day on the Interstate.

During jury deliberations at 1:30 a.m., the judge summoned counsel for all parties to the courtroom and advised them of his intention to summon the jury and inquire concerning its progress toward reaching a verdict and to indicate if it could not reach a verdict soon, he would like to have it return a sealed verdict for opening the following morning. Plaintiff's counsel objected to a sealed verdict.

The jury was then called into the courtroom with no court reporter present. The judge inquired of the jury if it could tell him approximately when a verdict could be reached, and the jury advised him they had no idea. The judge then asked the jury how they were divided, without indicating in whose favor. The foreman stated they stood 7 to 5. The court then told the jury to return to the jury room and do its best to reach a verdict.

Before the jury left the box, defendant's counsel said he believed the jury wished to ask a question. The court asked if there was any objection to the jury submitting a question orally. No objection was voiced. The jury submitted a question in writing which the judge read aloud:

"If we find that both parties were negligent, can we give a verdict to the party who was the least negligent?"

The court stated orally:

"If one of the parties is contributorily negligent that precludes his recovery."

Plaintiff's counsel then asked the court "that the jury also be instructed that one cannot be held to have been contributorily negligent unless that finding is by a preponderance of the evidence and that such contributory negligence was a proximate cause of the injury." The court stated: "Yes, Mr. Wilson [plaintiff's counsel] is correct in that regard."

Defendant's counsel then stated "And that is also true as it

pertains to the question of whether the defendants are negligent." Plaintiff's counsel then stated "We request that the jury again be instructed that they are to consider all the instructions together, and are not to single out one instruction and disregard others." The court responded "Yes, that is right."

The jury then returned to the jury room and returned an 8-4 verdict for defendants. Judgment was entered thereon. Upon denial of plaintiff's motion for a new trial, plaintiff appeals from the final judgment and denial of her motion for a new trial.

The parties are not in agreement as to the issues upon appeal. This disagreement goes to the phraseology and form of the issues rather than their substance. We can summarize the issues upon appeal in this fashion: (1) Error in giving three jury instructions. (2) Admissibility in evidence of Schultz' testimony as to the speed of the farm truck on the Interstate earlier in the afternoon of the accident. (3) Irregularity of proceedings during the jury deliberations.

Plaintiff contends that the district court committed reversible error in giving three jury instructions over her objections. The jury instructions involved are court's instructions Nos. 11, 13 and 21. The first two instructions generally involve the status of decedent on the premises where the accident occurred and the duty owed by the contractor to decedent. The third involves the reciprocal duties owed by a contractor and a highway user on a public highway under construction.

Court's instruction No. 11 reads as follows:

"One of the issues to be determined by you in this case is the duty of care owed by the defendants to the plaintiff's decedent at the time and place the accident occurred. Determination of this issue depends upon whether the plaintiff's decedent was a licensee or an invitee.

"A licensee is a person who for his own pleasure, conven-

ience or benefit enters or remains upon premises in the possession of another with express or implied permission of the possessor.

"An invitee is a person who enters upon land in the possession of another at the invitation of the possessor or for the common interest or mutual advantage of both the possessor and the person entering."

Plaintiff objected to this instruction by a lengthy objection covering about 1½ pages of the transcript. We will condense and summarize plaintiff's objection in this manner: (1) the definition of licensee therein is not a correct statement of the law as to that portion reading "or remains upon the premises in the possession of another with express or implied permission of the possessor" contained in the second paragraph of the instruction; (2) it is confusing in that in order to be a licensee you must both enter for your own pleasure, convenience, and benefit, and remain for that purpose, while the instruction implies that either original entry or remaining for that purpose is sufficient; (3) the correct definition of licensee is given in MJIG #120.03 which should be given rather than this instruction, and that the correct definition of business licensee is given in MJIG #120.04 which should be given; (4) that the correct definition of business invitee is contained in plaintiff's offered instruction #43 which should be given; and (5) all reference to "invitee" in the instruction should be amended to read "business invitee."

Plaintiff's contention upon appeal is that this instruction is erroneous in that (1) the district court should have instructed the jury that decedent was a business visitor as a matter of law rather than permitting the jury to determine whether he was an invitee or a licensee, and (2) the instruction is misleading in that the jury might infer that although Hart was a business visitor on the premises, his employee, the decedent, was not.

These objections now urged upon appeal were not

raised by plaintiff's objection to this instruction in the trial court. Objections to instructions not raised in the trial court upon settlement cannot be raised for the first time on appeal. Clark v. Worrall, 146 Mont. 374, 406 P.2d 822; Vogel v. Fetter Livestock Co., 144 Mont. 127, 394 P.2d 766; Holland Furnace Co. v. Rounds, 139 Mont. 75, 360 P.2d 412.

■ Equally dispositive of plaintiff's contention upon appeal is the existence of conflicting evidence as to the status of plaintiff's decedent on the premises at the time of the accident. There were roads leading from the gravel pit to Hart's farm other than the Interstate. There is a conflict in the evidence as to whether Hart was granted permission to use the Interstate in hauling the gravel to his farm. Prior to the day of the accident, nothing was established as to when and how Hart was to get the gravel. Thus there is a substantial evidentiary conflict, at the very least, concerning decedent's status on the Interstate highway at the time of the accident entirely aside from his status in coming to the gravel pit. Instructions Nos. 11, 12 and 13 covered all aspects of possible duty owed by the contractor to Hart and decedent under conflicting evidence and, read as a whole, correctly state the law.

Plaintiff's objection to instruction No. 13 is along the same line. Instruction No. 13 reads:

"If you find that plaintiff's decedent was a licensee, then I instruct you that the only duty owed by the defendants to him was to refrain from willful or wanton acts or misconduct, and to warn the plaintiff's decedent of hidden or concealed dangers, if any.

"If you find that plaintiff's decedent was an invitee, the defendants owed to him the duty of ordinary care."

Plaintiff's objection to this instruction upon settlement in the trial court was (1) that it had no application to the case, and (2) it was not a correct statement of the law as to the duty owed to a licensee, the MJIG instruction on the duty owed licensees being the correct law.

Upon appeal, plaintiff urges that this instruction is erroneous as it fails to include the duty of a possessor of land to a licensee thereon to refrain from active negligence.

Here again, plaintiff seeks to put the trial court in error on grounds never urged before it. Objections to instructions not raised in the trial court cannot be raised for the first time upon appeal, based upon the same case authority previously cited herein.

Plaintiff's final objection to jury instructions concerns instruction No. 21 which reads as follows:

· "You are instructed that it is the duty of a person traveling on a highway known to be under construction to keep a lookout for approaching vehicles, but where a person is lawfully performing work upon such a roadway, the relationship is different and such workman is not required to keep the same lookout as the traveler. All that is required of such workman is that he keep such lookout for vehicles as an ordinarily careful man similarly situated would keep."

Plaintiff's objection to this instruction upon settlement in the trial court was that it applies only to a public highway open during construction and it places a higher duty on decedent and a lesser duty on the contractor.

This instruction is substantially the same instruction previously approved in Blevins v. Weaver Const. Co., 150 Mont. 158, 432 P.2d 378. Although that case involved a collision between a motorist and a road grader on a highway open to travel during construction, while the instant case involves travel on a highway not yet open for travel, the instruction is equally applicable under the circumstances of the instant case. In both cases plaintiff and plaintiff's decedent, respectively, knew the highway was under construction and knew that the contractor's vehicles were using the highway. Given this knowledge, the duty owed by each is the same in both cases. Instruction No. 21 is a correct statement of the law under the evidence here. ·

■ Plaintiff next contends that the trial court committed prejudicial and reversible error in admitting, over her objection, opinion evidence by witness Schultz concerning the speed of the farm truck on the Interstate, assumed to have been driven by decedent earlier in the afternoon of the accident.

Witness Schultz, an employee of the contractor, testified that he had seen the loaded farm truck proceeding on the Interstate earlier in the afternoon and "I figure he was driving from between 65 and 70 according to what I figured out the way the speed he was going." Plaintiff objected to this testimony on the grounds of remoteness, irrelevancy, and immateriality. The court admitted the evidence for the purpose of impeachment. Decedent's employer Hart had previously testified that when he examined his truck after the accident he found it was in third gear and the maximum speed of the loaded truck in third gear was between 35 and 38 miles an hour, while in fourth gear it would have to go between 45 and 50 miles per hour to pull the load.

Plaintiff contends that this evidence was not admissible for impeachment purposes because it is not contradictory and does not tend to impeach anything Hart said. We find this to be incorrect. Schultz' testimony was directed at proving that the loaded gravel truck could travel at speeds in excess to that indicated by Hart in his testimony. Schultz' testimony tends to discredit any inference from Hart's testimony placing the speed range of the loaded farm truck below 40 miles per hour. It has nothing to do with decedent's speed at the time of the accident, but concerns the speed capabilities of the farm truck. As such, it is admissible for impeachment purposes under sections 93-401-4 and 93-1901-11, R.C.M.1947.

■ Plaintiff's final contention concerns irregularities in the jury proceedings heretofore mentioned which prevented her from having a fair trial. Plaintiff argues that there was a direct violation of section 93-5101, R.C.M.1947, requiring

the district court to charge the jury in writing, and section 93-5106, R.C.M.1947, to the same effect; that these statutes are mandatory; and that violation thereof by giving oral instructions constitutes reversible error. Plaintiff further points out that the occurrences in the instant case tended to overemphasize the defense of contributory negligence.

Plaintiff's contentions are without merit. Counsel for plaintiff not only was present at all proceedings and made no objections, but actively participated in such proceedings. Under such circumstances, the objections now raised by plaintiff are waived by reason of implied consent and cannot be raised for the first time upon motion for new trial following an adverse jury verdict. The same can be said for these new issues raised upon appeal. The reason behind this rule is that the trial court must be made aware of a party's objections to what is being done at the trial and must be given an opportunity to correct the objectionable matter; otherwise spurious issues unrelated to the issues at the trial and injected purely as an afterthought, might govern the outcome of an appeal.

Additionally, we fail to see how plaintiff's rights were prejudiced by the occurrences of which complaint is now made. There is no contention that such instructions as were given incorrectly stated the law; the requests of plaintiff's counsel for other instructions were, in effect, given. Nothing of an objectionable nature occurred other than violation of the statute requiring written or recorded instructions. What this Court said in Martello v. Darlow and Lovely, 151 Mont. 232, 441 P.2d 175, is equally applicable here and disposes of plaintiff's contentions:

"'* * * it is not every error or defect that occurs during the course of a trial that furnishes grounds for granting a new trial. The court must disregard any error or defect which does not affect the substantial rights of the parties. (Rule 61, M.R.Civ.P.) To authorize granting a new trial, the error complained of must be an error 'materially affecting the sub-

stantial rights of [the aggrieved party]' (section 93-5603, R.C.M. 1947) and the error must be of such character that refusal to grant a new trial 'appears to the court inconsistent with substantial justice.' (Rule 61, M.R.Civ.P.) In other words, if the substantial rights of the aggrieved party are not prejudiced, only 'harmless error' is involved not authorizing a new trial to be granted. Within these limitations, the trial court has broad discretion to grant a new trial and will not be reversed except for abuse thereof. (Tigh v. College Park Realty Co., 149 Mont. 358, 427 P.2d 57; State Highway Comm. v. Greenfield, 145 Mont. 164, 399 P.2d 989; Johnson v. Whitcomb, 149 Mont. 23, 422 P.2d 642.)"

The judgment of the district court is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES JOHN C. HARRISON, DALY and CASTLES, concur.