No. 12834

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

---

JAMES DAVIS and LUCY DAVIS,

Plaintiffs and Appellants,

-vs-

CHARLES R. BAINTER,

Defendant and Respondent.

---

Appeal from: District Court of the Sixth Judicial District,
Honorable Jack D. Shanstrom, Judge presiding.

Counsel of Record:

For Appellants:

Corette, Smith and Dean, Butte, Montana
Dolphy O. Pohlman argued, Butte, Montana

For Respondent:

Berg, Angel, Andriolo and Morgan, Bozeman, Montana
Charles F. Angel argued, Bozeman, Montana
Anderson, Symmes, Forbes, Peete and Brown,
Billings, Montana

---

Submitted: March 4, 1975

Decided: MAY 2 8 1975

Filed: MAY 2 8 1975

*Thomas J. Kearney*
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This is an appeal from a judgment entered in the district court, Sweet Grass County, on a jury verdict, against plaintiffs James and Lucy Davis and in favor of defendant Charles R. Bainter. Plaintiffs also appeal from an order of the district court denying their motion for a new trial.

The action arose out of an automobile accident involving Bainter's cattle truck, and an automobile owned by Mr. and Mrs. Vernie Hathaway, in which Lucy Davis was a passenger. As a result of the accident, Hathaways were killed instantly and Lucy Davis received severe injuries. The automobile itself was totaled. The Bainter truck incurred little damage. Bainter received no injuries, but was hospitalized after the accident for shock.

Plaintiffs Davis bring this appeal on the issue of whether the jury rendered/a verdict which was contrary to the great weight of the evidence.

The accident occurred June 29, 1973, at the Springdale turn off, located between Big Timber and Livingston on U.S. Highway 10. The following diagram indicates the relative positions of the parties and witnesses shortly before the accident:



Lucy Davis was a passenger in a station wagon driven by Mr. Hathaway (H) proceeding west toward Livingston. Bainter (B) was driving a stock truck east toward Big Timber when he noticed the car in front of him, driven by Ronning (R) was signaling for a left turn onto the Springdale road. Plaintiffs originally named Ronning as a codefendant, but upon his motion the district court dismissed Ronning as a party defendant.

The events which ten occurred are in dispute, but the collision did occur between Bainter's truck and the Hathaway car. The left front of the Hathaway car collided with the left rear of the Bainter truck and the top of the car was completely sheared off.

Highway Patrolman Clarence Owen investigated the accident and took statements from the witnesses including Bainter; Ronning; John Esp, a passenger in Ronning's vehicle; and Lyle Ehlke (E), who was following the Bainter truck at the time of the accident.

Plaintiffs' theory evolves from the testimony of Lloyd Ronning and John Esp. The day the accident took place it had been raining. At the time of the accident it was only misting, but there was standing water on the road. Ronning testified that as he was slowing to make the left turn into Springdale, he saw the Bainter truck closing in on him; that the truck was zigzagging; and, that he was afraid that an accident might occur because the Bainter truck seemed to be out of control. To prevent an accident, Ronning turned right onto a turnoff. He did not see the accident occur between the Hathaway car and Bainter's truck.

John Esp, the passenger in Ronning's car, said he turned around to look out the back window when Ronning told him there might be an accident. Esp testified that he too saw Bainter's truck zigzagging down the road, as it was approaching them. However, he also failed to see the actual accident take place between Bainter and Hathaway.

From the above testimony, plaintiffs maintain the accident occurred when the Bainter truck, because it was out of control, crossed into the west lane, causing the Hathaway car to strike it.

There was no testimony elicited from any witness which conclusively put the Bainter truck in the westbound lane of traffic.

The closest testimony was a leading question asked by plaintiffs' attorney to John Esp:

> "Q. He [Bainter] turned to the right, but the back end went to the left as he either turned or skidded, isn't that correct? A. Yes."

The investigating highway patrolman testified that because of the location of the debris after the accident, he had no doubt that the accident occurred in the westbound lane.

Defendant's theory, obviously the theory believed by the jury, comes primarily from the testimony of Lyle Ehlke who was following the Bainter truck at the time of the accident. Ehlke and his wife at the time of the accident were enroute to Minnesota from Washington. They knew no one involved in the accident. Ehlke told the highway patrolman that a white station wagon had passed him just prior to the accident, proceeded down the road and struck the side of the Hathaway vehicle, causing it to veer and strike Bainter's truck. Ehlke and the highway patrolman investigated the left side of the Hathaway car after the accident and found only a small scratch on the left side, which was not a new mark. At trial, Ehlke testified to the effect that the white station wagon passed on the left side of the Hathaway car and struck the left side of the Hathaway vehicle, causing it to veer and collide with the rear end of the Bainter cattle truck.

There is some conflict as to which side of the Hathaway vehicle Ehlke told the investigating highway patrolman that the white station wagon struck. The highway patrolman claims it was the right side. Ehlke maintains it was the left side, even though they investigated both sides of the Hathaway vehicle.

Plaintiffs contend Ehlke's testimony is highly improbable, incredible, and inherently impossible and claim that this Court ought to disregard it in its consideration, citing as authority Casey v. Northern Pacific Ry. Co., 60 Mont. 56, 68, 198 P. 141, and quote:

"The rule has been stated repeatedly in this jurisdiction that a court may reject the most positive testimony, though the witness be not discredited by direct evidence impeaching him or contradicting his statements. The inherent improbability of his story may deny it all claims to respect." (Emphasis added.)

Plaintiffs point out that the two stories related by Ehlke are contradictory and not worthy of belief for it is so obviously contrary to the testimony of the other witnesses.

This Court cannot agree. We find there is sufficient evidence to support the verdict.

Plaintiffs point out that Mrs. Ehlke, as a passenger in the Ehlke vehicle, saw the accident between the Hathaway car and the Bainter truck. They claim that she did not see a second white station wagon. With good visibility to the left and front, Ronning did not see a second white station wagon. Esp, who was looking north to the front and rear of the Ronning car, did not see a second white station wagon. Bainter testified that he did not see a white station wagon come from the rear, pass Ehlke's pickup, travel down the center line of the highway and pass between the Hathaway car and his cattle truck. Plaintiffs maintain that had the white station wagon done what Ehlke claimed it did, surely these people would have seen it also.

However, there is testimony which tends to explain why no one else saw the accident, and which corroborates Ehlke's story.

Ronning's testimony under cross-examination concerning the accident and the white station wagon was:

"Q. But you don't know on which side of the road it [Bainter's truck] was on? A. That is the question that is hard for me to answer.

"Q. You saw the Bainter truck turning toward the right toward the ditch? A. He was zigzagging, and then he come around like that.

"Q. And headed toward the ditch then? A. When he come around like that I heard the crash. That is when the accident happened.

"Q. Again, you don't know where the impact was in relation to the westbound lane? A. I wish I could say where it was, but I mean, it was behind me. And I was busy trying to get my car---to keep from tipping this car over I was driving. I don't want to be wrong with anybody.

"Q. Regarding the white station wagon that Mr. Pohlman was questioning you about, you can't say that the white station wagon didn't pass that area? A. No, I can't. It could have. I have thought of it for six months."

Mr. Ronning's concern over being involved in an accident, and being in the process of turning, explains why he might have failed to see any white station wagon.

John Esp, the passenger in the Ronning car, testified that he too failed to see a white station wagon leaving the scene of the accident, but also testified that his attention was directed to the rear when the accident occurred, and he did not see the accident actually occur.

Bainter testified he did not see the white station wagon until he got out of his truck after the accident, and saw a white station wagon proceeding down the road. He also testified that because he was turning his truck toward the ditch when the accident happened that he would have been unable to see the white station wagon.

Mrs. Ehlke, who was riding in the pickup with her husband, said she did not see the white station wagon, but did testify that just prior to the accident she did hear something. On direct examination by defendant's attorney Mrs. Ehlke testified:

"Q. Just prior to the impact did you see or hear anything else other than -- A. Yes. Something went right by the truck. And I said to my husband, I said, what was that.

"Q. When you say went by the truck, you mean your truck? A. Yes. Went right by.

"Q. Was this a sound that you heard? A. Yes.

"Q. Was the sound going from back to front or front to back? A. It was coming from the back to the front.

"Q. How long after you heard that sound did you see this impact? A. Right after.

"Q. Did you ever actually see anything pass you, yourself? A. No."

Again no direct testimony concerning the white station wagon, but testimony which lends credibility to Mr. Ehlke's story.

More supporting testimony comes from Doug Solberg, a student from Montana State University, who was driving well behind the people involved in the accident, at the time it occurred. His testimony establishes there was another white station wagon. Solberg testified the white station wagon followed him for a length of time and then passed him. There is conflicting testimony between Ehlke and Solberg as to the number of passengers in the white station wagon.

The investigating highway patrolman, Clarence Owen, testified he had no doubt that the accident occurred in the westbound lane of traffic, and that the Bainter truck swerved into that lane causing the accident. This he ascertained from location of the debris of the wreck scattered on the highway. However, there was testimony elicited from Officer Owen showing that he failed to question anyone as to the removal of debris from the eastbound lane of traffic before his arrival at the scene of the accident around 7:30 p.m., approximately 20-25 minutes after the accident occurred. Officer Owen also testified that he radioed to Big Timber for law enforcement officials to be on the lookout for the described white station wagon, with negative results. But, the radio call was not transmitted until some 40 minutes after the accident occurred.

Officer Owen testified he doubted that three cars could pass simultaneously on the highway, although he admitted he had failed to measure the width of the highway and record it. Another witness, Dr. Drumheller, a physics professor from Montana State University, testified that he had measured the width of the road and found it to be 32 feet, theoretically wide enough for the three cars in question to have passed simultaneously. Dr. Drumheller further testified that it was conceivable the accident could have occurred between the Hathaway car and the Bainter truck at a minimum angle of 22 degrees, but the doctor could not say for sure on which side of the highway the accident occurred. Dr.

Drumheller also testified the Hathaway car, after the impact, could have been thrown sideways, which would explain why it was located in the westbound lane heading straight down the road.

A thorough review of the record reveals there was credible evidence supporting both theories of how the accident occurred. Therefore, the jury did not render a verdict which was contrary to the great weight of the evidence. But, to the contrary, the verdict is supported by substantial credible evidence.

As to whether the district court erred in denying plaintiffs' motion for a new trial, this Court has held that the trial court has broad discretion to grant or refuse to grant a new trial and will not be reversed on appeal except for a manifest abuse of that discretion. Johnson v. Whitcomb, 149 Mont. 23, 422 P.2d 642; Tigh v. College Park Realty Co., 149 Mont. 358, 427 P.2d 57. Where there is substantial credible evidence to support the verdict it is not error for the district court to deny a motion for a new trial. Davis v. Smith, 152 Mont. 170, 448 P.2d 133; Kincheloe v. Rygg, 152 Mont. 187, 448 P.2d 140; Heen v. Tiddy, 151 Mont. 265, 442 P.2d 434.

This Court having found substantial credible evidence to support the jury verdict finds no abuse of discretion or error on the part of the district court in denying the motion for a new trial.

The judgment of the district court is affirmed.

_____
Justice

We Concur:

-------------------------------------
Chief Justice

Mr. Justice John Conway Harrison dissenting:

I dissent.

_____
                Justice