No. 12712

IN THE SUPREME COURT OF THE STATE OF MONTANA

1974

---

THE STATE OF MONTANA, ACTING BY AND
THROUGH THE STATE HIGHWAY COMMISSION
OF THE STATE OF MONTANA,

Plaintiff and Appellant,

-vs-

WILLIAM L. DUNKS and CHARLOTTE M. DUNKS,
husband and wife,

Defendants and Respondents.

---

Appeal from: District Court of the Fifth Judicial District,
Honorable Nat Allen, Judge presiding.

Counsel of Record:

For Appellant:

Jack A. Holstrom argued, Helena, Montana
Harry C. Alley and Leo J. Kottas, Jr., Helena, Montana

For Respondents:

Burgess, Joyce, Prothero, Whelan and O'Leary,
Butte, Montana
Robert T. O'Leary argued, Butte, Montana

---

Submitted: November 19, 1974

Decided: FEB 19 1975

Filed: FEB 19 1975

Thomas J. Kearney
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This is an appeal from an order of the district court, Jefferson County, granting a mistrial. The original action was brought by the State Highway Commission for the condemnation of certain land owned by William L. Dunks and Charlotte M. Dunks. On August 23, 1973, the jury returned a verdict in the amount of $35,000. That jury consisted of twelve men and women, plus one alternate juror, Irene Buhl. It was not established with certainty when the jury began its deliberation, but when it did Irene Buhl went into the jury room with the regular members of the jury. It was also not established precisely how long she was in the jury room and exactly at what time the bailiff removed her. It is certain that it all took place between 11 a.m. and 12 noon. The State Highway Commission claims Irene Buhl was in the jury room for only five to ten minutes. Dunks claim the time was more like twenty to thirty minutes.

After Mrs. Buhl was removed from the jury room, she went to lunch with the jury members and sat with them during lunch. After lunch, she sat outside the jury room with the bailiff. The evidence does not indicate how long it was after the return from lunch before the jury returned the verdict. In their brief Dunks state it was "shortly thereafter".

No one is certain what went on in the jury room while Irene Buhl was present. The State Highway Commission submitted to the court an affidavit from the foreman of the jury which states in part:

> "* * * Irene L. Buhl, the alternate juror, sat in only a few minutes in the jury room when the jury retired around 11:30 a.m., and that Mrs. Buhl, in no way participated in any discussion or deliberation concerning the actual above-entitled case as the jury was dismissed for lunch, and when the jury returned from lunch she had been excused from the jury panel.

> "2. The Affiant further states that to the best of his information and believe the presences of Mrs. Buhl, the alternate juror in no way prejudiced or in any way seriously caused injustice to the defendants."

The bailiff testified that he could not hear what went on while Irene Buhl was in the jury room, but he thought they talked about going to lunch.

After the return of the verdict, defendant Dunks moved for a mistrial because Mrs. Buhl had been in the jury room during part of the deliberations. The court, after a hearing on the motion, granted the motion for mistrial. From that order the Highway Commission appeals and assigns three issues for review. However, we are of the opinion that all three issues can be resolved by answering the first issue:

"Whether the Respondents' Motion for a New Trial, granted by an Order of the presiding trial Judge, dated the 17th day of October, 1973, was a manifest abuse of discretion?"

In reviewing jury deliberation cases it can readily be seen the solemnity placed on such deliberations by the judiciary and the legislature. Once the jury retires to the jury room, the judge is not permitted to talk to the jury directly without the presence of both counsel. Section 93-5106, R.C.M. 1947; United States v. Agueci, 310 F.2d 817, cert.den. 372 U.S. 959, 83 S.Ct. 1016, 10 L ed 2d 12. Neither is the bailiff allowed to communicate with the jury except to ask if two-thirds of them have reached a decision. Section 93-5105, R.C.M. 1947. Now we are called upon to decide if it be error to have an alternate juror communicate with the jury after it has retired.

Appellant Commission submitted an affidavit from the foreman of the jury to the effect that Irene Buhl did not deliberate in the case, and her presence in no way prejudiced respondents. We cannot allow that to be the deciding factor. The foreman does not necessarily know all that was said in the jury room and what prejudicial effect it might have had on the other jury members. He cannot guarantee Irene Buhl did not somehow influence a jury member other than himself.

Respondents cite several cases which support the proposition that an alternate juror in the jury room at the time of deliberations is reversible error:  People v. King, 216 N.Y.S.2d 638;  People v. Britton, 4 Cal.2d 622, 52 P.2d 217; People v. Bruneman, 4 Cal.App. 2d 75, 40 P.2d 891; Commonwealth v. Krick, 164 Pa.Super. 516, 67 A.2d 746.  Appellant points out that all the above cited cases are criminal cases, therefore they are not applicable to the instant case.  With that argument we cannot concur.  It is true legal principles have been applied less stringently to civil juries than criminal juries, however, we cannot conclude that there is a double standard that can be applied to the sanctity of a jury's deliberations based on criminal or civil process.

There are civil cases dealing with mistrials because of the number of jurors  participating in the deliberation.  City of Flat River v. Edgar, (Mo. 1967), 412 S.W.2d 537, dealt with two jurors who because of their religious convictions, refused to join the jury deliberations.  The court held the defendant in that case did not receive a fair trial.  Johnson v. Holzemer, 263 Minn. 227, 116 N.W.2d 673, concerned a verdict reached by the jury after a juror, unable to perform her duties as a juror, was dismissed and no alternate juror replaced her.  There the court held the verdict was void.  True, these cases concern fewer than the required number of jurors deliberating, rather than more, however they do illustrate the importance of having the required number of jurors during deliberation.

The Pennsylvania Supreme Court in Schankweiler v. Penn.Lighting Co., 275 Pa.50, 118 A. 562, in deciding what constituted interference with the jury decision making function, stated:

> "That confidence in trial by jury may be preserved, and that parties may feel a verdict is based on an honest consideration of the evidence * * * every appearance of evil must be avoided, and every precaution taken to guard against all matters tending in the slightest degree to corrupt or influence the verdict. * * *"

Rule 47(c), M.R.Civ.P., provides in pertinent part:

"* * *An alternate juror shall not join the jury
in its deliberation unless called upon by the court
to replace a member of the jury.* * *"

Here, the alternate juror was not called on to replace a member of the jury.

The evidence in this matter is in conflict regarding the time spent in the jury room by the alternate juror. The jury foreman has offered an opinion that no harm was done. These are not the controlling considerations. Public policy, as stated by the Pennsylvania Court, requires that to maintain confidence in the jury system "every appearance of evil must be avoided, and every precaution taken to guard against all matters tending in the slightest degree to corrupt or influence the verdict." (Emphasis added)

If unauthorized persons interfere with this process we are not at liberty to make arbitrary exceptions based on time, actual harm, nor the fact that during the trial the person involved was a sworn alternate juror. If such were the case we would soon damage the solemnity associated with the jury system and loss of faith in its usefulness would soon follow.

The trial judge did not abuse his discretion. The judgment of the district court is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices.

Mr. Justice Frank I. Haswell, dissenting:

I would reverse the order granting defendants a new trial and reinstate the jury verdict. This result is based on two grounds: (1) waiver; (2) harmless error.

After discovery and removal of the alternate juror from the jury room, defendants with full knowledge thereof did not move for a mistrial. Instead, defendants permitted the jury to continue its deliberations and return its verdict without objection. When the verdict was not to their liking, they moved for a new trial 22 days later. Defendants are not entitled to have their cake and eat it too.

The record is barren of any objection by defendants between the time of discovery of the presence of the alternate juror in the jury room and the time defendants moved for a new trial. They did not object when the jury returned its unanimous verdict in open court on August 23. They did not object prior to entry of judgment on the verdict on September 5. Defendants' first objection was their motion for new trial on September 14.

Objections involving irregularites in jury proceedings known to a party at the time and not objected to are waived; they cannot be raised for the first time upon motion for a new trial following an adverse jury verdict. Seder v. Peter Kiewit Sons' Company, 156 Mont. 322, 479 P.2d 448.

Additionally, I believe the error was harmless under the circumstances of this case. No prejudice to defendants is indicated except an unfavorable verdict. The verdict was unanimous. The insignificance of the error is demonstrated more eloquently than a thousand words by defendants' failure to object or move for a mistrial.

The majority hold that the presence of the alternate juror in the jury room in itself is reversible error. I disagree with this blanket holding.

A new trial can be granted only for an error "materially affecting the substantial rights" of the aggrieved party. Section 93-5603, R.C.M. 1947. Prejudice is never presumed but must affirmatively

- 6 -

appear. Martello v. Darlow et al., 151 Mont. 232, 441 P.2d 175; Conway v. Fabian, 108 Mont. 287, 89 P.2d 1022. The error must be of such character that refusal to grant a new trial "appears to the court inconsistent with substantial justice". Rule 61, M.R.Civ.P. In my view, none of these requirements for a new trial is present in this case.

A prima facie case of manifest abuse of discretion in awarding a new trial is made by discrediting the grounds specified for a new trial or showing that existing error did not materially affect the substantial rights of the moving party. Tigh v. College Park Realty, 149 Mont. 358, 427 P.2d 57. Such is the case here, in my opinion.

For these reasons, I would deny defendants a new trial and reinstate the jury verdict and judgment entered thereon.

_____
Justice.