507 So.2d 1193 (1987)
Petra EICKMEYER, Appellant,
v.
DUNKIN DONUTS OF AMERICA, INC., a Foreign Corporation and Amir, Sajad, Shaukat & Zeeshan, a Florida Corporation, Appellees.
No. 86-1771.
District Court of Appeal of Florida, Third District.
June 2, 1987.
George W. Chesrow, Manuel A. Crespo, Miami, for appellant.
James C. Blecke and Susan S. Lerner, Miami, for appellees.
Before SCHWARTZ, C.J., and HENDRY and HUBBART, JJ.
SCHWARTZ, Chief Judge.
When the jury returned to the courtroom with a defense verdict in this trip-and-fall case, everyone was surprised to observe that it consisted of seven members.[1] Unnoticed *1194 by counsel, the trial judge had neglected to excuse the alternate juror, Ms. Tunez. She had therefore retired to the jury room and, it was specifically ascertained, actively participated in the deliberations. On this basis, the plaintiff immediately moved for a "mistrial." Although the court indicated that a new trial might be required, final judgment was subsequently entered on the seven-person-jury-verdict in the defendants' favor. We reverse for a new trial.
It is well-settled in Florida that fundamental, reversible error occurs whenever, as here, an alternate juror  who is considered as any other unauthorized person[2]  is so much as present during the deliberations even though, unlike the present case, he remains silent and contributes nothing to the result. Berry v. State, 298 So.2d 491 (Fla. 4th DCA 1974); Lamadrid v. State, 437 So.2d 208 (Fla. 3d DCA 1983) (following Berry); Fischer v. State, 429 So.2d 1309 (Fla. 1st DCA 1983) (same), pet. for review denied, 438 So.2d 834 (Fla. 1983).
While these decisions involve criminal prosecutions, there is no reason why a different rule should apply to a civil case. Florida Rule of Criminal Procedure 3.280(a), which concerns alternate jurors and which was specifically relied upon by the Fourth District in the leading case of Berry v. State, 298 So.2d at 491, and by this court in Lamadrid v. State, 437 So.2d at 208, is essentially identical to Florida Rule of Civil Procedure 1.431(f)(1). That provision mandatorily requires that "[a]n alternate juror who does not replace a principal juror shall be discharged when the jury retires to consider the verdict." In a broader sense, the same concerns of the sanctity and secrecy of the jury room apply with as much force to civil as to criminal trials and as much implicate the rights of civil as of criminal litigants. For these reasons, in Kuykendall v. Southern Railway, 652 F.2d 391, 393 (4th Cir.1981), the court, citing prior decisions which were followed in Berry, held:
We have adopted a per se rule of reversal in criminal cases where alternate jurors were allowed to retire with the jury. See United States v. Chatman, 584 F.2d 1358 (4th Cir.1978); United States v. Virginia Erection Co., [335 F.2d 868 (4th Cir.1964)]. Our rationale in those cases is equally applicable to civil actions.
Accord State Highway Commission v. Dunks, 166 Mont. 239, 531 P.2d 1316, 1318 *1195 (1975) ("It is true legal principles have been applied less stringently to civil juries than criminal juries, however, we cannot conclude that there is a double standard that can be applied to the sanctity of a jury's deliberations based on criminal or civil process.") We agree with these decisions.[3]
We are unimpressed with the appellees' claim that the rule we apply here should not result in reversal because the jurors all stated they had been unaffected by the alternate's presence. First, the accuracy of these avowals, like all made under similar circumstances, is itself open to great doubt, if only because they came in response to an inquiry by the trial judge which strongly implied that all the jury's efforts would have been for naught if they answered otherwise. See Weber v. State, 501 So.2d 1379, 1384 (Fla. 3d DCA 1987). Second, the mere presence of Ms. Tunez violated the secrecy of the jury room even if she had said nothing. Third, and probably most important, the ineffable nature of the workings of a given, properly chosen jury and the consequent inability for anyone (including, perhaps especially, the jurors themselves) really to know to what extent the psychology of that small group has been affected by an intruder is the very reason why the error is deemed "fundamental"  that is, in this sense, one which requires no affirmative showing of harm. See, e.g., Ivory v. State, 351 So.2d 26, 28 (Fla. 1977) (England, J., concurring). In sum, the jury could not know and therefore cannot be heard to say that Ms. Tunez's presence made no difference. Because of this, as Berry and Lamadrid have held, reversal is required on this ground even if the alternate does not speak; a fortiori, it is mandated by her actual and active participation in the process. See Dunks, 531 P.2d at 1318 (foreman's opinion that no harm done irrelevant; "[i]f unauthorized persons interfere with this process we are not at liberty to make arbitrary exceptions based on time, actual harm, nor the fact that during the trial the person involved was a sworn alternate juror. If such were the case we would soon damage the solemnity associated with the jury system and loss of faith in its usefulness would soon follow").
Finally, we reject the contention that the plaintiff waived reliance on the error by failing to file a post-trial memorandum or motion for new trial. As a general rule, all that is required  even in a non-"fundamental" situation  to preserve error below is to give the trial court a fair opportunity to rule on the issue. In this case, that plainly occurred when the plaintiff asserted her position by motion for mistrial when the error became apparent on the jury's return. Since this is true, there was no requirement of a separate motion for new trial.[4] 3 Fla.Jur.2d Appellate Review § 97 (1978). We may properly consider the point on review of the trial judge's obvious, and, we hold, erroneous, rejection of that position embodied in the entry of judgment for the defendants. See Lamadrid, 437 So.2d at 208 ("We have concluded, in the light of the holding in Berry, that the trial court's denial of a mistrial was reversible error.").
Reversed.
NOTES
[1] After the verdict was published, the following occurred:

THE COURT: Does anybody wish to poll the jury?
MR. KELLY [defendants' counsel]: No.
MR. DUARTE [plaintiff's counsel]: Yes.
(Whereupon, the jury was polled, and in response to the question, "Is this your verdict," answered in the affirmative.)
MR. DUARTE: Motion for mistrial. Plaintiff respectfully moves this court for a mistrial.
MR. KELLY: Object. I think we could inquire of the jury whether or not the alternate engaged in the deliberations.
THE COURT: What we have done, of course, I had suggested when the oath was administered that of course the alternate would only take a part in the deliberations in the event of disability by any of the six of you and now, of course, we realize that we did not excuse the alternate and she was in the jury room during deliberations. Miss Tunez did you take part in the deliberations in the jury room?
MS. TUNEZ: Yes.
MR. DUARTE: I do not think the Court has any choice in the matter, Judge.
THE COURT: Let me go ahead and discharge the jury and then we will talk about it.
MR. KELLY: I would ask the Court to reserve ruling and allow us to brief the matter.
THE COURT: Everybody was polled?
MR. KELLY: Correct.
THE COURT: I will reserve ruling on it. Let me let the jury go home. I just have not been with it I guess for the past two days as you all probably realize. Whether it is because I have been working too hard or have a cold, I don't know, but I should not have let the alternate juror go into the jury room with you. The result of course may be that we may have to retry this case with another jury, but that does not affect your service. We want to thank you very much for the service you rendered to us, to the county, to your fellow citizens, to counsel and the Court.
* * * * * *
MR. KELLY: If I could, I would move the Court to poll the jury to determine whether the deliberations of the alternate affected the opinion of any other member of the jury.
THE COURT: All right. Let's try it.
MR. KELLY: Would you pose that question to them and have them indicate yes or no.
THE COURT: Mr. Gordon, did whatever Miss Tunez said or did in with your deliberations have any effect on your finding in this verdict?
MR. GORDON: No, not at all.
MR. DUARTE: I would object to this procedure. There is a rule of civil procedure.
THE COURT: You may be. I'm going to do it. I just don't know what the rule is yet but I'm going to go through it and we shall see.
Mr. Clark, what about you?
MR. CLARK: No, sir.
THE COURT: Mr. Costello?
MR. COSTELLO: No, sir.
THE COURT: Mr. Mazorana?
MR. MAZORANA: No, sir.
THE COURT: Miss Pendinzelli?
MS. PENDINZELLI: No, sir.
THE COURT: Mr. Vento?
MR. VENTO: No, sir.
THE COURT: Let me give you these certificates to express our appreciation to you and discharge you so that you can all go home and start the weekend.
(Whereupon, the jury retired from the courtroom and the following proceedings were had:)
MR. KELLY: If we can have ten days to submit memorandums to Your Honor 
THE COURT: You are not going to be able to retry it in that time or not. Submit memos to me. I reserve ruling for the motion for mistrial. I think I have to grant it but I am willing to listen.
[2] See Stevens Markets, Inc. v. Markantonatos, 189 So.2d 624 (Fla. 1966) (communication with trial judge in jury room).
[3] We distinguish Life From the Sea, Inc. v. Levy, 502 So.2d 473 (Fla. 3d DCA 1987), in which we held that the criminal rule of automatic reversibility which applies when the court communicates with the jury in open court without notice to counsel does not obtain in civil cases. In our view, the potentialities for abuse and the importance of the respective issues involved are not comparable. The difference between the two situations is shown by the cases cited in Life From the Sea, which specifically hold that principle inapplicable civilly. In contrast, Kuykendall and Dunks explicitly hold otherwise as to the present situation.
[4] Such a motion is required only as to issues, such as the weight of the evidence and inadequacy and excessiveness, which were not the subject of a prior objection or ruling.