994 P.2d 838 (2000)
140 Wash.2d 112
Frederick L. JONES, Sr., Respondent,
v.
SISTERS OF PROVIDENCE IN WASHINGTON, INC., a Washington corporation d/b/a Providence Medical Center and Providence Family Medical Center; Susan Lo, M.D.; and Richard G. Foutch, M.D., Petitioners.
No. 67740-9.
Supreme Court of Washington, En Banc.
Argued November 16, 1999.
Decided March 9, 2000.
*839 William Robert Hickman, Margaret Sundberg, Mary Spillane, Seattle, Ruth Rocker, Janet Schroer, Portland, OR, for Petitioners.
Lembhard Howell, Seattle, for Respondent.
IRELAND, J.
The sole issue before this court in this medical malpractice action is whether reversal was required because an alternate juror participated in deliberations. We hold that under the facts of this case it was prejudicial error requiring reversal.

I.

Facts
In June 1995, Frederick Jones brought a medical malpractice action against Drs. Susan Lo and Richard Foutch claiming that they were negligent for failing to diagnose Jones' right leg ischemia.[1] Jones also named *840 Sisters of Providence as a defendant because both Drs. Lo and Foutch were working out of facilities owned by Providence when they treated Jones.[2]
As the case was being submitted to the jury, the trial court requested that the alternate juror be present and actively participate in deliberations, but advised the alternate to not actually vote on the verdict.[3] The record reveals no advance discussion with counsel on this subject, either in or out of the jury's presence. Neither the court nor any of the parties sought a stipulation to this procedure. Furthermore, neither party objected, nor was there any further discussion between the court and counsel on the use of the alternate juror before the verdict was entered.
The jury deliberated for about two days, with the alternate juror being present for almost half of deliberations but leaving the jury room before the regular jurors voted on the verdict. Following the jury's verdict for Providence, Jones moved for a new trial, arguing that the trial court erred by allowing the alternate juror to deliberate with the jury. The trial court denied Jones' motion, finding that under the relevant civil rule, CR 47(b), the court could include the alternate juror in the deliberations and, even if not, Jones waived any error by failing to object.
Jones appealed raising numerous issues for review. In the published portion of the Court of Appeals' decision, the court found that the alternate juror's participation during deliberations constituted reversible error and remanded the case for a new trial. Jones v. Sisters of Providence, 93 Wash.App. 727, 970 P.2d 371 (1999). The Court of Appeals affirmed on all other issues in the unpublished portion of its decision.[4]

II.

Analysis

A.

Error
The first question is whether the trial court actually erred in permitting the alternate juror to deliberate. The relevant portion of CR 47(b) states:
An alternate juror who does not replace a regular juror may be discharged or temporarily excused after the jury retires to consider its verdict. When an alternate juror is temporarily excused but not discharged, the trial judge shall take appropriate steps to protect such juror from influence, interference or publicity which might affect that juror's ability to remain impartial, and the trial judge may conduct brief voir dire before seating such alternate juror for any trial or deliberations. An alternate juror may be recalled at any time that a regular juror is unable to *841 serve.... If the jury has commenced deliberations prior to the replacement of a regular juror with an alternate juror, the jury shall be instructed to disregard all previous deliberations and to begin deliberations anew.
Providence asserts that CR 47(b)'s use of the permissive "may" regarding discharging or temporarily excusing an alternate, coupled with the rule's goal of protecting alternates from improper outside influences, provides a trial judge with the discretion to allow the alternates to participate in deliberations. Under Providence's theory, there is no better way to protect an alternate from improper outside influences than by confining the alternate to the jury room.
Two cardinal rules of statutory construction, however, contradict Providence's position  that statutes should be read reasonably and as a whole. See Weyerhaeuser Co. v. Tri, 117 Wash.2d 128, 133, 814 P.2d 629 (1991) (construe statutes as a whole) (citing case); Draper Mach. Works, Inc. v. Department of Natural Resources, 117 Wash.2d 306, 315, 815 P.2d 770 (1991) (construe statutes reasonably) (citing case).[5] We find that when these rules of construction are applied, CR 47(b) does not authorize the practice employed by the trial court.
The rule's use of the permissive "may" simply delineates for the trial court two options it may implement when dealing with alternate jurors at the close of a trial. The trial court may either discharge the alternate juror outright or temporarily excuse the alternate juror. CR 47(b). If an alternate is only temporarily excused, the trial court may then recall that alternate to replace a regular juror who is unable to continue. If, however, an alternate replaces a deliberating juror after deliberations have commenced, deliberations must begin "anew." CR 47(b). No other options are expressly provided by the rule.
Furthermore, contrary to Providence's arguments, CR 47(b) does not provide that an alternate juror's participation is a proper means of protecting the jury from outside influences. The rule neither directs nor authorizes a particular method to be employed by the court. Absent any specific directive in the rule, it is unreasonable that the general policy of protecting alternates from outside influences overrides the specific rule that the trial court must choose between permanently discharging and temporarily excusing the alternate. See Morris v. Blaker, 118 Wash.2d 133, 143-44, 821 P.2d 482 (1992) (specific controls over general in context of conflicting statutory provisions). Furthermore, the goal of protecting temporarily discharged alternates from improper outside influences can still be promoted under our interpretation of the rule given that the trial court may voir dire the recalled alternate to determine if he or she has suffered any improper influence. See CR 47(b).
Finally, the trial court's expressed goal of efficiency would not be served because CR 47(b) clearly requires that deliberations must begin "anew" when an alternate replaces a regular juror. There is no indication in the rule that this provision does not apply to situations where an alternate has been participating in deliberations as an alternate. The rule simply can not be reasonably read as authorizing the practice employed. See Draper, 117 Wash.2d at 315, 815 P.2d 770; Weyerhaeuser, 117 Wash.2d at 133, 814 P.2d 629. Consequently, we conclude that allowing the alternate to participate in the jury's deliberations was error under CR 47(b).

B.

Prejudice
Having found error, the next issue is whether the error was prejudicial requiring reversal. Jones relies on our decision in State v. Cuzick, 85 Wash.2d 146, 530 P.2d 288 (1975) to argue that it was prejudicial error to allow the alternate to participate in deliberations. Cuzick held that it was reversible error to allow an alternate juror to be present during deliberations in a criminal trial. See State v. Cuzick, 85 Wash.2d at 148-51, 530 P.2d 288. Jones asserts that this case is "closely analogous" to Cuzick, but that the *842 violation here was "even more egregious" due to the alternate's presumed active participation in the deliberations. Appellant's Br. at 9-10.
Providence, on the other hand, attempts to distinguish Cuzick and cites a number of decisions from foreign jurisdictions to argue that even if error, an alternate's participation in civil deliberations does not warrant reversal absent a showing of actual prejudice.[6] Providence further claims that the alternate was not a "stranger" in the jury room because he was "so similarly situated to the other jurors as to be in a virtually identical position and role," and whatever influence the alternate may have had vanished before the jury reached its verdict.[7]
Contrary to Providence's assertions, we find Cuzick controlling. While Cuzick was a criminal case, the same concerns are present here  the sanctity of the jury room and the participation of an unauthorized individual who was "not committed to the decision that was ultimately reached, not faced with the awful responsibility to decide[.]" Cuzick, 85 Wash.2d at 149, 530 P.2d 288.
A fundamental underpinning of our jury system, both in the criminal and civil contexts, is that accountability should exist with each of the decision-makers. By participating, the alternate was able to influence the other jury members, the actual decisionmakers, while remaining unrestrained by any actual responsibility regarding the outcome of the case. Without this type of accountability, faith that the alternate made a conscientious decision while participating in either criminal or civil deliberations would be significantly undermined. See Cuzick, 85 Wash.2d at 149, 530 P.2d 288.[8]
Under Cuzick, prejudice is presumed where there has been a breach in the sanctity of the jury room because it is impossible, or at least overly burdensome, to determine what occurred in the jury room and what effect the alternate had on the other jurors. See Cuzick, 85 Wash.2d at 150, 530 P.2d 288 (prejudice presumed "unless `it affirmatively appears that there was not, and could not have been, any prejudice.'" (quoting State v. Carroll, 119 Wash. 623, 624, 206 P. 563 (1922))). It is undisputed that the alternate participated in the deliberations, and it far from "affirmatively appears that there was not, and could not have been, any prejudice." Cuzick, 85 Wash.2d at 150, 530 P.2d 288 (quoting Carroll, 119 Wash. at 624, 206 P. 563). Consequently, the presumption of prejudice has not been overcome. See id.[9]

C.

Waiver
Having found prejudicial error, we next address whether the error was waived by a failure to object at trial. Jones argues that under Cuzick, mere silence is insufficient to waive the rights at issue. Providence, on the other hand, argues that Cuzick's waiver rule does not apply to civil *843 trials[10] and that Jones waived his right to appeal because counsel may not "`secretly nurture an error'" in hopes of winning on appeal.[11]
While we recognize that instances exist where legal principles apply less stringently to a civil case than a criminal case, a "double standard" should not be applied "to the sanctity of a jury's deliberations based on criminal or civil process." See State Highway Comm'n v. Dunks, 166 Mont. 239, 531 P.2d 1316, 1318 (1975); accord Kuykendall v. Southern Ry. Co., 652 F.2d 391, 393 (4th Cir.1981); Eickmeyer v. Dunkin Donuts of Am., Inc., 507 So.2d 1193, 1194 (Fla.Dist.Ct.App.1987); Daniels v. Bloomquist, 258 Iowa 301, 138 N.W.2d 868, 872 (1965). We are not dealing solely with the constitutional right to a jury trial, but also the integrity of the jury process itself. See Cuzick, 85 Wash.2d at 148-49, 530 P.2d 288.[12] As the Court of Appeals aptly stated, "[O]nce Mr. Jones invoked his right to a civil jury, he had a reasonable expectation that the trial court would employ procedures that protected the jury from outside influence." Jones, 93 Wash.App. at 734, 970 P.2d 371 (citing CR 47(b)); see also Cuzick, 85 Wash.2d at 149-50, 530 P.2d 288 (in face of waiver claim, this court held prejudice presumed where trial court improperly allowed alternate juror to "invade the jury room"). Consequently, limited to the specific facts of this case, we find that error was not waived.

III.

Conclusion
While we recognize that a trial court's attempt at innovation in the name of judicial efficiency should often be encouraged, innovations should not be implemented at the expense of jury room sanctity. If a trial court wishes to implement procedural innovations, it is likely the preferred, if not required, practice to obtain prior party stipulation.[13] Any proposed stipulation affecting jury deliberations should be made only after counsel are given an adequate opportunity to consult with their clients and provided that the parties' positions are clearly articulated on the record.
We hold that under the specific facts of this case, the alternate juror's participation during deliberations constituted prejudicial error that was not waived by Jones' failure to object. The Court of Appeals' decision reversing the trial court is affirmed and the case is remanded for a new trial.
GUY, C.J., JOHNSON, MADSEN, ALEXANDER, TALMADGE, SANDERS, JJ., COLEMAN, and SHIELDS, J.P.T., concur.
NOTES
[1] Ischemia is the reduction or lack of blood flow to a part of the body. Report of Proceedings (RP) (Nov. 20, 1996) at 52.
[2] Sisters of Providence and Drs. Lo and Foutch are collectively referred to as "Providence" in this opinion.
[3] The following is the court's colloquy on the subject:

Gentlemen, I'm going to excuse you for lunch; I'd like you back in the jury room  let's say in one hour, ... then you can begin your deliberations.
. . . .
Oh wait, wait, I'm sorry. Wait, don't go.
. . . .
Before the trial started, we had designated seats for alternates, and Mr. Caudell, you are in the alternate seat.
What I'm going to suggest and I hope it meets with your approval, is that when we return from the lunch hour, that you deliberate with the jury, but I'm going to caution you that you may not vote on any question before the jury.
The reason I'm proposing this is as follows: It doesn't happen often, but if any of the other jurors were not able to complete jury service, I would call you back and the deliberations would have to start all over again.
I know you've paid close attention to this case; as I say, you are welcome to participate in the discussions on all the questions before the jury, but you may not vote[.] ... I do caution you that I may have to call you back if any of the other jurors are not able to complete their service during deliberations.
RP (Nov. 27, 1996) at 168-69.
[4] Five weeks after this court granted Providence's petition for review, Jones filed a motion requesting this court to consider all issues raised to the Court of Appeals. Jones' motion was denied, however, because it violated RAP 13.4 by being both untimely and by failing to discuss any of the proper "Considerations Governing Acceptance of Review."
[5] It is well-established that court rules are interpreted in the same manner as statutes. State v. McIntyre, 92 Wash.2d 620, 622, 600 P.2d 1009 (1979) (citing case).
[6] See, e.g., Br. of Resp't Lo at 17-22 (citing, inter alia, Hanson v. Parkside Surgery Ctr., 872 F.2d 745, 748-50 (6th. Cir.1989) (requiring actual prejudice be shown where alternate was allowed to participate and vote in deliberations)).
[7] Supplemental Br. of Pet'r Lo at 15-19 (citing Johnson v. Duckworth, 650 F.2d 122, 125-26 (7th Cir.1981) (presence of alternate juror not invasion of jury's privacy; "presence of strangers" argument does not apply to alternate jurors)).
[8] See also State Highway Comm'n v. Dunks, 166 Mont. 239, 531 P.2d 1316, 1318 (1975) (court noted in civil case that goal of preventing interference with jury decision-making function designed to ensure that "parties may feel a verdict is based on an honest consideration of the evidence.") (quoting Schankweiler v. Pennsylvania Lighting Co., 275 Pa. 50, 118 A. 562, 562 (1922)); accord Eickmeyer v. Dunkin Donuts of Am., Inc., 507 So.2d 1193, 1194-95 (Fla.Dist.Ct.App.1987) (court held in civil case that allowing alternate to participate and vote required reversal).
[9] We briefly note that Providence's "alternates are not strangers" argument is also inconsistent with the rule's intent. See, e.g., Supplemental Br. of Pet'r Lo at 19. The authors of CR 47(b) took great pains to distinguish between "alternate jurors" and "regular jurors," discussing each type of juror specifically and separately throughout the rule. Consequently, we find that alternate jurors are significantly distinct from regular jurors under CR 47(b). See State v. Roberts, 117 Wash.2d 576, 586, 817 P.2d 855 (1991) (statute's use of different but related terms within the same provision indicates that the related terms have different meanings) (citing case).
[10] See, e.g., Br. of Resp't Lo at 19-23 (citing, inter alia, EEOC v. State of Del. Dep't of Health & Soc. Servs., 865 F.2d 1408, 1421 (3d Cir.1989) (claims of prejudice waived by "express disavowal" of any objection when court raised issue of including alternate in deliberations)).
[11] Supplemental Br. of Pet'r Lo at 13-14 (quoting Agranoff v. Morton, 54 Wash.2d 341, 346, 340 P.2d 811 (1959)).
[12] Accord State v. Lehnherr, 30 Or.App. 1033, 569 P.2d 54, 57 (1977); Daniels, 138 N.W.2d at 872 ("It is often said that the jury trial is one of the bulwarks of our liberty, but it will remain so only as long as public confidence in the institution prevails.") (citing case).
[13] See Kuykendall, 652 F.2d at 392 (while "[i]nnovations by imaginative trial judges may lead to useful procedural improvement," trial courts should not ignore mandatory rules and should seek stipulations where permitted when departing from such rules).